UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANCE KRISTEN CHONG,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>   Defendant. | Case No. CV 13-1044-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

  On February 19, 2013, plaintiff Constance Kristen Chong filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of Dr. Herbert Chin; (2) whether the ALJ properly considered plaintiff's credibility; and (3) whether the ALJ erred in his residual functional capacity ("RFC") determination. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-12. Memorandum in Support of Defendant's Answer ("D. Mem.") at 9-15.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinion of plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence for doing so, and also failed to properly consider plaintiff's credibility. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-three years old on December 1, 2009, her alleged onset date of disability, is a college graduate. AR at 83, 230, 270. Plaintiff has past relevant work as a medical transcriber. *Id.* at 83.

On December 23, 2009, plaintiff filed applications for a period of disability, DIB, and SSI due to bipolar disease, depression, anxiety, panic disorder, and fibromyalgia. *Id.* at 229, 270. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 105-13, 117-21.

On April 5, 2011, plaintiff appeared at a hearing before ALJ James Goodman. *Id.* at 92-99. Plaintiff's counsel withdrew from representation at the onset of the hearing. *Id.* at 93. Although plaintiff twice expressed that she wished

to proceed on her own, ALJ Goodman continued the hearing in order for plaintiff to retain other counsel. *Id.* at 95, 98.

On July 7, 2011, plaintiff, appearing without counsel, testified at a hearing before ALJ Milan Dostal. *Id*. at 65-91.  The ALJ also heard testimony from Susan Allison, a vocational expert.  *Id*. at 83-88.  On August 12, 2011, the ALJ denied plaintiff's claim for benefits.  *Id*. at 30-38.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability, December 1, 2009.  *Id.* at 32.

At step two, the ALJ found that plaintiff suffered from the following severe impairments:  fibromyalgia; bipolar II disorder; anxiety; mood disorder; and hypothyroidism under treatment.  *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings").  *Id.* at 33.

The ALJ then assessed plaintiff's RFC,[1] and determined that she had the RFC to perform medium work with the following limitations:  lift/carry fifty pounds occasionally and twenty-five pounds frequently; and sit/stand/walk six hours in an eight-hour workday.  *Id.*  The ALJ also determined that plaintiff had pain in the neck, back, shoulder, hand, wrist, knee, and hips that was moderate in nature, but could be controlled with medication without significant adverse side

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

effects. *Id.* Finally, the ALJ determined that plaintiff's bipolar disorder, depression, anxiety, anger, and aggression would only have a slight effect on her ability to maintain attention, concentration, and memory. *Id.*

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as a medical transcriber. *Id.* at 37. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 38.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.     The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinion of a Treating Physician**

Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Herbert Chin. P. Mem. at 4-7. Specifically, plaintiff contends the ALJ's reason for rejecting Dr. Chin's opinion – inconsistencies with the record as a whole, including medical evidence and plaintiff's daily activities – was not specific and legitimate and supported by substantial evidence. *Id.* The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

1  F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-
2  (2). The opinion of the treating physician is generally given the greatest weight
3  because the treating physician is employed to cure and has a greater opportunity to
4  understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th
5  Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).
6       Nevertheless, the ALJ is not bound by the opinion of the treating physician.
7  *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the
8  ALJ must provide clear and convincing reasons for giving it less weight. *Lester*,
9  81 F.3d at 830. If the treating physician's opinion is contradicted by other
10 opinions, the ALJ must provide specific and legitimate reasons supported by
11 substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific
12 and legitimate reasons supported by substantial evidence in rejecting the
13 contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a
14 non-examining physician, standing alone, cannot constitute substantial evidence.
15 *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*
16 *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
17 813, 818 n.7 (9th Cir. 1993).

    **1.** **Dr. Chin**

    Dr. Chin, a psychiatrist, treated plaintiff from April 7, 2010 through at least
June 30, 2011.[2] *See* AR at 400-02, 604. Dr. Chin diagnosed plaintiff with bipolar
II disorder. *Id.* at 610. During the sessions, Dr. Chin observed that plaintiff had
pressured and soft speech, anxiety, depression, and mood swings. *See id.* at 397-

---

[2] The record appears to be missing treatment notes. In the April 7, 2010 certification, Dr. Chin indicated that his next appointment with plaintiff was May 26, 2010. AR at 446. In a letter opinion dated June 30, 2011, Dr. Chin stated that he last examined plaintiff on June 21, 2011. *Id.* at 604. The record does not contain the treatment notes for the May 26, 2010 appointment or any appointments after January 19, 2011.

99, 401, 421. Dr. Chin also noted that, on multiple occasions, plaintiff reported that the medication was not helping. *See id.* at 397, 399, 425. On January 5, 2011, Dr. Chin noted that plaintiff was stable, but then two weeks later Dr. Chin noted plaintiff had a meltdown because she lost her prescription. *Id.* at 423, 425.

The record includes three opinions from Dr. Chin. In a California disability certification form dated April 7, 2010, Dr. Chin opined that plaintiff would not be able to perform her regular and customary work until December 31, 2010 due to mood swings, inability to concentrate and complete tasks, and episodes of decompensation. *Id.* at 446. In a Release to Return to Work form dated July 28, 2010, Dr. Chin restricted plaintiff to two hours of work per day for three days per week. *Id*. at 445. In a June 30, 2011 opinion, Dr. Chin stated that plaintiff's mood was labile, and she was "aggressive, angry, anxious[,] eupohric and irritable." *Id.* at 604. Dr. Chin noted that plaintiff had "extreme mood swings with inability to concentrate and finish tasks" and she decompensated easily. *Id.* at 606. Dr. Chin further opined that although plaintiff was competent to perform activities of daily living, she had difficulty coping with them. *Id*. at 608. Citing an example to support this opinion, Dr. Chin relayed an incident at Walmart, in which plaintiff kicked an employee. *Id.* at 608, 610. Dr. Chin concluded that plaintiff was unable to perform full-time employment "due to her continued impulsivity and varying mood swings combined with her agitated labile behavior," and that she had marked restrictions in her ability to perform activities of daily living due to the physical pain from fibromyalgia, which in turn contributed to her depression. *Id.* at 612.

**2.     Examining Physicians**

From July 1990 through 2007, plaintiff received psychiatric care for her bipolar disorder at the Asian Pacific Counseling and Treatment Center ("Center"). *See id.* at 450, 459. Plaintiff stopped her treatment after the Center discontinued

7

seeing patients on a cash basis. *Id.* at 450. The treatment notes from the Center are difficult to read, but it appears that her medications were helping her. On October 17, 2006, plaintiff reported that it was harder and harder to concentrate at work. *Id.* at 509.

Dr. Eliseo Mills treated plaintiff on three occasions from October 2009 through February 2010.[3] *See id.* at 361-62, 365-67. Dr. Mills diagnosed plaintiff with bipolar II disorder. *Id.* at 367. Dr. Mills noted that plaintiff was anxious and depressed, but the medications helped her. *Id.* at 361-62. Dr. Mills also noted that plaintiff was written up at work and did not wash. *Id.* at 361.

### 3. State Agency Physicians

Two State Agency physicians also provided opinions as to plaintiff's alleged mental impairment. *Id.* at 375-85, 393-94. On April 9, 2010, Dr. R. Paxton reviewed plaintiff's file and opined that she had an affective disorder, but it was not severe. *Id.* at 375, 377. Dr. Paxton further opined that plaintiff would have only one or two episodes of decompensation, and had mild limitations with respect to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *Id.* at 383. On August 2, 2010, Dr. F.L. Williams opined that plaintiff did not have a severe mental impairment. *Id.* at 393-94.

### 4. The ALJ's Findings

The ALJ concluded that plaintiff had the following severe mental impairments: bipolar II disorder; anxiety; and mood disorder. *Id*. at 32. The ALJ also concluded that these mental impairments, as well as plaintiff's anger and aggression, would only have a slight effect on her ability to maintain attention, concentration, and memory. *Id.* at 33. In reaching that determination, the ALJ

---

[3] From 2007 through late 2009, plaintiff's primary care physicians refilled her psychiatric medications. *See* AR at 450-454, 457.

8

gave Dr. Chin's opinion with respect to the severity of plaintiff's impairments "little probative weight" on the basis that his opinion was inconsistent with the record as a whole. *Id.* at 36. Specifically, the ALJ found that Dr. Chin's opinion was inconsistent with the opinions of the examining and non-examining medical sources, and with plaintiff's daily activities. *Id.* The ALJ erred because he failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Chin's opinion. *See Lester*, 81 F.3d at 830.

The first reason cited by the ALJ – that Dr. Chin's opinion was inconsistent with his own treatment notes – was not supported by substantial evidence.[4] The ALJ noted that in January 2011, Dr. Chin's notes reflect that plaintiff reported she was feeling better and the medication was helpful, but then on June 30, 2011, Dr. Chin reported that plaintiff had continued difficulty with concentration and opined that she was unable to work full-time. *Id.* at 36. Although the ALJ correctly noted that plaintiff stated on January 5, 2011 that she was feeling better and the medication was helpful, it is the only treatment note that indicated improvement and stability. *Id.* at 423. At almost every other session, plaintiff complained that she was not feeling better and the medication did not help. *See id.* at 397, 399, 425; *see also id.* at 398 (medication helped with the physical pain). Moreover, only two weeks after plaintiff reported feeling better on January 5, 2011, she had a meltdown because she lost her prescription, and Dr. Chin noted that she was angry and demanding. *Id.* at 425. Although Dr. Chin's treatment

---

[4] Although the ALJ did not specifically cite inconsistency with his own treatment notes as a reason for rejecting Dr. Chin's opinion, the ALJ stated that he considered examining medical sources. AR at 36. Because the ALJ did not order a consultative psychiatric examination, Dr. Chin was the only treating or examining physician to provide an opinion regarding plaintiff's mental impairment. As such, the court assumes that the ALJ found Dr. Chin's opinion inconsistent with his own treatment notes.

9

notes lacked the detail of his June 2011 opinion, the opinion was not inconsistent with his own treatment notes.

In addition to disregarding most of the treatment notes, the ALJ also did not discuss Dr. Chin's July 2010 opinion (Release to Work) limiting plaintiff to two hours of work per day for three days a week. *See* AR at 445-46. Although defendant contends that the Release to Work opinion was for a two-month duration, October 2010 through December 2010 (D. Mem. at 12), nothing on the form supports defendant's claim. *See* AR at 445.

The second reason the ALJ cited for rejecting Dr. Chin's opinion – inconsistency with other physicians – was similarly unsupported by substantial evidence. *See Magallanes*, 881 F.2d at 751-54 (inconsistency with the medical record is a specific and legitimate reason for rejecting an opinion). The only other examining physician was Dr. Mills, who did not submit an opinion as to plaintiff's non-exertional limitations.[5] Dr. Mills only treated plaintiff on three occasions, and although her treatment notes indicated that plaintiff's medications helped her and had no remarkable findings, the notes also reflected that plaintiff was depressed, anxious, not washing, and was having trouble at work. *See id.* at 361-62, 365-67. Dr. Mills's notes were not necessarily inconsistent with Dr. Chin's opinion.

The only other physicians who contributed opinions about plaintiff's mental limitations were the State Agency physicians. Because there is no other evidence supporting their conclusions, those opinions, by themselves, cannot constitute substantial evidence. *See Widmark*, 454 F.3d at 1067 n.2; *Morgan*, 169 F.3d at 602. Furthermore, it is unclear that the ALJ even credited their opinions as, in

---

[5] Dr. Concepcion A. Enriquez was a consulting internist and performed a physical examination. *See* AR at 369-72. To the extent that defendant contends that the ALJ rejected Dr. Chin's opinion regarding plaintiff's fibromyalgia, Dr. Chin did not offer an opinion as to her fibromyalgia except that the pain affected her sleep, which in turn contributed to her depression. *See id.* at 612.

contrast to the ALJ, the State Agency physicians both concluded that plaintiff did not suffer from a severe mental impairment. *See* AR at 375, 393-94.

Finally, the ALJ cited plaintiff's self-reported daily activities as a basis for rejecting Dr. Chin's opinion. Inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason for rejecting the opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff reported that she did light housework, cooked simple meals, and ran errands. AR at 274. Plaintiff also reported that she could read magazines but not books, watched movies once a week, and ate dinner with her family once or twice a month. *Id*. at 278. None of these daily or regular activities exceeded Dr. Chin's opined limitations. As for plaintiff's part-time work, as discussed *infra*, it does not appear that the amount plaintiff worked exceeded Dr. Chin's limitations either.

Accordingly, the ALJ failed to cite specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Chin.

**B.     The ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to make a proper credibility determination. P. Mem. at 7-11. Specifically, plaintiff contends that the ALJ did not provide clear and convincing reasons that were supported by substantial evidence for discounting plaintiff's credibility. *Id.* This court agrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p.[6] To determine whether testimony concerning

---

[6] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with

11

symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 37. At the second step, because the ALJ did not find any evidence of malingering, the ALJ must provide clear and convincing reasons for finding plaintiff less credible. Here, the ALJ discounted plaintiff's credibility because: (1) of "her treatment history"; (2) her symptoms were inconsistent with the objective medical evidence; and (3) she could perform a "wide range of activities of daily living," including working part-time. *Id.* at 36. The ALJ's reasons were not supported by substantial evidence.

First, the ALJ noted: "One factor affecting [plaintiff's] credibility is her treatment history." *Id.* But this reason is too vague to be clear and convincing.

---

the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

12

"Treatment history" could mean a lack of treatment history, conservative treatment, or perhaps even inconsistency between plaintiff's symptoms and the medical evidence. Assuming that the ALJ meant that plaintiff had a lack of treatment history, the evidence would not support such a reason. The record shows that plaintiff consistently sought treatment from 1990 through the present. *See id*. at 361-62, 365-67, 450-59, 604. Assuming that the ALJ meant conservative treatment, the fact that plaintiff was not hospitalized, alone, would be insufficient to find her not disabled. *See Tommasetti*, 533 F.3d at 1040 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility); *but see, e.g.*, *Kuharski v. Colvin*, No. 12-1055, 2013 WL 3766576, at *5 (E.D. Cal. Jul. 16, 2013) ("The fact that plaintiff had not been hospitalized for a psychiatric crisis does not mean that his treatment was 'conservative' or that he could function in a normal working environment."); *Finn v. Astrue*, No. 11-1388, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7, 2013) (lack of hospitalization was not a specific and legitimate reason to reject the ALJ's opined mental limitations). Regardless, at a minimum the ALJ must clarify what he meant by "treatment history" for it to constitute a clear and convincing reason.

      Second, the ALJ noted that the objective medical evidence did not support plaintiff's claims. Here, the ALJ cited the fact that Dr. Enriquez found no pain tender points, plaintiff was able to reach six inches from the floor, and her range of motion was within normal limits in all joints other than the lumbrosacral spine and left hip, which exhibited tenderness. AR at 35-36; *see id.* at 371-72. But it is unclear how this evidence is inconsistent with plaintiff's complaints of pain. There is no dispute that plaintiff suffers from fibromyalgia. Indeed, plaintiff twice received trigger point injections for her fibromyalgia. *See id.* at 476-78. At the hearing, plaintiff testified that she had persistent stabbing nerve pain all over, in particular in her back and knees. *Id.* at 75. She testified that her knees and hips were "very bad" and her wrist and fingers were getting tight. *Id.* at 73. Plaintiff

13

further testified that Cymbalta has helped her, but she still had good and bad days. *Id.* at 73-74. She did not testify that her range of motion was impaired. As for the lack of tender points upon examination, fibromyalgia symptoms may come and go so the absence of trigger points on one occasion does not signify lack of pain at all times.[7] Thus, the ALJ's assertion that plaintiff's symptoms were inconsistent with the objective medical evidence was not supported by substantial evidence.

Third, the ALJ found that plaintiff's daily activities were inconsistent with her alleged symptoms. *Id.* at 36; *see Morgan*, 169 F.3d at 599 (a plaintiff's ability "to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit her). The ALJ noted plaintiff's ability to perform light housekeeping, prepare meals, and run errands, as well as her ability to work eighteen to twenty-four hours a week, go to movies, and spend time with family. AR at 36. At the hearing, plaintiff had testified that on bad days, she stayed in bed all day, her anxiety caused her to want to get away from crowds, she could only sit for about 30 minutes to an hour at a time, and she could walk about thirty minutes at a time. *Id.* at 75-76. In a Function Report dated March 7, 2010, plaintiff reported that she did light housework, ran errands, and did two hours of transcribing work. *Id.* at 274. Plaintiff also reported difficulty concentrating and handling stress. *Id.* at 278, 280.

"[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if a

---

[7] *See* http://www.mayoclinic.com/health/fibromyalgia-symptoms/AR00054 (noting that the old guidelines required tender points but the newer diagnostic criteria did not).

14

claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" him. *Id.* Here, plaintiff's ability to do light housework, run errands, watch a movie, and have dinner with her family once or twice a month did not mean that she had the physical ability to work the entire work day, had the mental ability to maintain attention and concentrate the entire work day, or could deal with work stress. Likewise, her ability to conduct these daily activities was not inconsistent with her claimed symptoms.

      Plaintiff's ability to work part-time, however, was an activity directly transferrable to a work setting. *See Vertigan*, 260 F.3d at 1050. In an undated Work Activity Report, plaintiff indicated that she worked twenty-four hours a week, earning ten dollars an hour. AR at 260-61. In a Work Background form dated September 13, 2010, plaintiff reported that she worked eighteen hours a week. *Id.* at 443. Regardless of whether plaintiff worked eighteen or twenty-four hours a week, this evidence supported the ALJ's finding that plaintiff was less credible.

      The problem, however, is that plaintiff's reported earnings contradict plaintiff's stated hours. Plaintiff earned only $3621.99 in 2010. *Id.* at 218. Had plaintiff been paid ten dollars an hour, then she should have only worked an average of seven hours a week. If plaintiff only worked seven hours a week, then she did not spend a substantial part of her day working as the ALJ found. There was additional evidence that plaintiff did not work 18-24 hours a week. In a letter dated January 4, 2011, plaintiff explained that in late 2009, she worked twenty-five hours a week in order to procure insurance. *Id.* at 450. This coincided with plaintiff seeking treatment from Dr. Mills and her initial application for disability. But as plaintiff's "health deteriorated," plaintiff became a cash patient of Dr. Chin's instead. *Id.* This implies that by the time plaintiff sought treatment from

Dr. Chin, she was not working the twenty-four hours necessary to qualify for insurance benefits. Because a finding that plaintiff only worked seven hours a week as opposed to 18-24 hours a week would be consistent with Dr. Chin's work restrictions, the earnings report, and her loss of insurance, plaintiff's ability to work part-time did not constitute substantial evidence that her alleged symptoms were inconsistent with her activities.

Because the court is remanding the case, the ALJ should seek clarification as to how many hours plaintiff actually worked. Moreover, in discussing plaintiff's limited ability to work, Dr. Chin referred the Commissioner to copies of plaintiff's employment record, but such records were not included in the record. AR at 608. The ALJ should also obtain the referenced employment records.

In sum, however, the ALJ's reasons for discounting plaintiff's credibility were not clear and convincing and supported by substantial evidence.

### 3.     The ALJ Must Reconsider Plaintiff's RFC

Plaintiff argues that the ALJ erred in his RFC determination because it was inconsistent with Dr. Chin's opinion. P. Mem. at 11-12. Because the court found that the ALJ failed to properly consider Dr. Chin's opinion, the ALJ must reconsider plaintiff's RFC after reconsidering Dr. Chin's opinion

## V.
## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be

resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly evaluate Dr. Chin's opinion and plaintiff's credibility. On remand, the ALJ shall: (1) reconsider the opinion provided by Dr. Chin regarding plaintiff's mental impairments and limitations, and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it; (2) reconsider plaintiff's subjective complaints with respect to her impairments and the resulting limitations, and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them; and (3) reconsider plaintiff's RFC. The ALJ shall also further develop the record as needed, which may include ordering a consultative psychiatric examination and obtaining any additional medical and employment records. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: December 16, 2013

SHERI PYM
United States Magistrate Judge